Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:     516.741.4977
Facsimile:      516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARK MORGAN,<br><br>                          Plaintiff,<br><br>          vs.<br><br>WAVEDANCER, INC., JAMIE BENOIT, PAUL BECKER, CHIP DIPAULA, JACK L. JOHNSON, JR., WILLIAM PICKLE, and BONNIE WACHTEL.<br><br>                          Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1)  Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2)  Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Mark Morgan ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.      Plaintiff brings this stockholder action against WaveDancer, Inc. ("WaveDancer" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to merge with Firefly Neuroscience, Inc. ("Firefly"), through merger vehicle

FFN, Inc. ("Merger Sub") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed merger transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a November 15, 2023, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, each share of Firefly common stock issued and outstanding will be converted into common stock of WaveDancer based on a fixed exchange ratio. At the effective time of the merger, stockholders of Firefly will own approximately 92% of the combined company and stockholders of WaveDancer will own approximately 8% of the combined company, on a fully diluted basis.

3.      Thereafter, on January 22, 2024, the Company filed a Form S4 attaching the Registration Statement (the "Registration Statement") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair for a number of reasons. Significantly, it appears as though the Board has entered into an agreement which will provide little to no consideration to any Company stockholder whatsoever and will significantly dilute the shares held by Plaintiff and other Company stockholders.

5.      The Registration Statement is materially deficient, depriving Plaintiff of the information necessary to make an intelligent, informed, and rational decision of whether to vote in favor of the Proposed Transaction, and is thus, in violation of the Exchange Act.  As detailed below, the Registration Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for WaveDancer and Firefly, provided by WaveDancer management to the Board and the Board's financial advisor B. Riley Securities ("B. Riley"); (c)

any and all financial valuation analyses or liquidation analysis that should have been done in connection with the Proposed Transaction, if any, provided to the Company and the Board.

6.     Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

## PARTIES

7.     Plaintiff is a citizen of Kentucky and, at all times relevant hereto, has been a WaveDancer stockholder.

8.     Defendant WaveDancer engages in development and maintenance of information technology systems, modernizing client information systems, and offers other IT-related professional services to government and commercial organizations in the United States. WaveDancer is incorporated under the laws of the State of Delaware and has its principal place of business at 12015 Lee Jackson Memorial Highway, Suite 210, Fairfax, VA 22033.  Shares of WaveDancer Common Stock are traded on the NASDAQ Stock Exchange under the symbol "WAVD."

9.     Defendant Jamie Benoit ("Benoit") has been the Chairman of the Board of Director of the Company at all relevant times. Benoit is also the Chief Executive Officer of the Company.

10.     Defendant Paul Becker ("Becker") has been a director of the Company at all relevant times.

11.     Defendant Chip DiPaula ("DiPaula") has been a director of the Company at all relevant times.

12.     Defendant Jack Johnson, JR. ("Johnson") has been a director of the Company at all relevant times.

13.     Defendant William Pickle ("Pickle") has been a director of the Company at all relevant times.

14.     Defendant Bonnie Wachtel ("Wachtel") has been a director of the Company at all relevant times.

15.     Defendants identified in ¶¶ 9-14 are collectively referred to as the "Individual Defendants."

16.     Non-Party Firefly is an AI company engaged in the development of innovative neuroscientific solutions that improve outcomes for patients with mental illnesses and neurological disorders.

17.     Non-Party Merger Sub is a wholly owned subsidiary of Firefly created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

19.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

20.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the NASDAQ Stock Exchange which is headquartered in this District.

**SUBSTANTIVE ALLEGATIONS**

*Company Background*

21.     WaveDancer engages in development and maintenance of information technology systems, modernizing client information systems, and offers other IT-related professional services to government and commercial organizations in the United States. The Company also offers secure supply chain management software solutions; consulting, development, training, and migration; and software development, system modernizations, cloud-based solutions, and cybersecurity services.

*The Flawed Sales Process*

22.     As detailed in the Registration Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company.

23.     Notably, the Registration Statement fails to disclose adequate reasoning as to why the Board would agree to a deal in which stockholders' interests would be diluted, with little to no consideration given.

24.     The Registration Statement states that Defendant Wachtel voted against entering into the Proposed Transaction but fails to provide any information regarding her reasoning for voting against the merger.

25.     Moreover, the Registration Statement is silent as to the specific nature of the confidentiality agreement entered into between the Company and Firefly, the specific ways, if any, this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Registration Statement, if so, in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

26.     The Registration Statement fails to address Company's reason for hiring B. Riley to analyze the Proposed Transaction but failing to require a fairness opinion in connection with same.

27.     Furthermore, The Registration Statement fails to adequately disclose the consideration paid to, or owed to, the financial advisor engaged by the Company during the sales process for services rendered in relation to the sales process and Proposed Transaction.

28.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

29.     On November 16, 2023, WaveDancer and Firefly issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> FAIRFAX, Va., Nov. 16, 2023 (GLOBE NEWSWIRE) -- WaveDancer, Inc. ("WaveDancer") (NASDAQ: WAVD) today announced that it has entered into a definitive merger agreement with privately held, commercial-stage, medical technology company, Firefly Neuroscience, Inc. ("Firefly"), to combine the companies in an all-stock transaction. The combined company will focus on continuing to develop and commercialize Firefly's Artificial Intelligence driven Brain Network Analytics (BNA™) platform, which was previously cleared by the U.S. Food and Drug Administration ("FDA"). Upon closing, which is currently expected in Q1-2024, the combined company is expected to operate under the name Firefly Neuroscience, Inc., and trade on the Nasdaq Capital Market.

"This transaction comes at an important time for Firefly as we accelerate the commercialization of our BNA™ platform," said Jon Olsen, Chief Executive Officer of Firefly. "Based on the world's largest medical-grade standardized database of electroencephalogram recordings, BNA™ is the first practical and feasible way for front-line clinicians to objectively measure brain function. As such, we believe the platform has the potential to improve patient management and develop biomarkers and companion diagnostics that will enable drug developers to bring more efficacious therapies to market faster and at a reduced clinical development cost. As a publicly traded company, we can continue to drive innovation and bolster our commercialization efforts while providing existing and new shareholders with the opportunity to participate in our growth story."

Jamie Benoit, Chief Executive Officer and Chairman of WaveDancer, commented, "Following a strategic review and analysis of our long-term prospects as a publicly-traded company, the Board determined that this merger is in the best interests of WaveDancer's stockholders and an attractive opportunity to realize significant value as Firefly pursues multiple market opportunities for its BNA™ platform. Firefly has emerged from the rigorous FDA approval process and its BNA™ platform has been subjected to comprehensive academic peer-review. We believe these factors contribute to a competitive advantage for Firefly and position it as a unique public company."

**About Firefly's Brain Network Analytics (BNA™) platform**

BNA™ is an FDA-cleared, cloud-based, AI-powered platform used to objectively assess brain function by comparing patient electroencephalograms (EEGs) with a proprietary database of standardized, high-definition EEGs and behavioral data. BNA™ is used by psychiatrists and neurologists in the United States to support the diagnosis of mental illnesses and cognitive disorders; optimize treatment care pathways; and improve patient compliance to therapy. Real-world clinical use has shown that when BNA™ is used as part of patient management, patients showed improved response rates; enhanced therapy compliance; and reduced non-responder rates and need for medication switching.

Biotechnology and pharmaceutical companies use BNA™ to support drug development decisions, including selecting an optimal dose and measuring cognitive effect.

The economic burden of people suffering from depression alone in the United States was estimated at \$326.2 billion for the year 2020. In addition, CNS drug development is costly (the cost of developing a new drug is typically US\$10—15 billion[3]), with the lowest success rate of all other drug categories.

Clinical use of BNA™ is currently offered on a cost-per-use basis; clinics can use established EEG reimbursement codes to perform a BNA™ assessment.

**About the Proposed Transaction, Management and Organization**

Under the terms of the merger agreement, each share of Firefly common stock issued and outstanding will be converted into common stock of WaveDancer based on a fixed exchange ratio, with any resulting fractional shares to be rounded to the nearest whole share. At the effective time of the merger, securityholders of Firefly

will own approximately 92% of the combined company and securityholders of WaveDancer will own approximately 8% of the combined company, on a fully diluted basis. WaveDancer's ownership may increase if it raises capital in excess of the minimum detailed in the Definitive Merger Agreement. The closing of the transaction is subject to customary closing conditions, including the effectiveness of the registration statement on Form S-4 to be filed by WaveDancer, and the receipt of required stockholder approvals from Firefly and WaveDancer stockholders.

Following the merger, WaveDancer, Inc. will be renamed "Firefly Neuroscience, Inc." and the corporate headquarters will be located in Toronto, Ontario. The combined company's Board of Directors after the Merger will consist of five members, one of whom will be designated by WaveDancer, and will continue to be chaired by Arun Menawat, Ph.D., who is currently CEO and Chairman of Profound Medical Corp. ("Profound"), a publicly traded, commercial-stage medical device company.

The combined company will be led by Jon Olsen, who joined Firefly as Chief Executive Officer in September 2020. Mr. Olsen has an accomplished history of executive management success in the global medical technology industry, building out commercial capabilities, leading marketing and sales teams, planning and executing transformative organizational changes, and cultivating strong thought leader relationships across multiple specialties. His 25 years of healthcare experience includes progressive leadership positions at two of the world's leading global medical technology companies, Smith & Nephew and Medtronic.

"We are thrilled that Jon has agreed to lead the combined company," said Dr. Menawat. "It has already been captivating to watch the scale, scope and speed with which leading clinicians and drug developers have begun to show interest in BNA™, and Jon's extensive and demonstrable record of accomplishment in helping to commercialize new medical technologies will continue to be invaluable as we execute the next stages of our growth strategy."

The transaction has been approved by the Board of Directors of both companies and is expected to close in Q1 2024, subject to customary closing conditions, including the approvals by the stockholders of each company. WaveDancer's operating subsidiary Tellenger, Inc., a provider of modernization services to the federal government, will be divested through a transaction closing simultaneous to the Firefly merger.

### *Potential Conflicts of Interest*

30.     The breakdown of the benefits of the deal indicates that WaveDancer insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of WaveDancer.

31.    For example, Company insiders, currently own large illiquid blocks of Company stock all of which will be converted into the Merger Consideration not shared with public Company stockholder such as Plaintiff upon the consummation of the Proposed Transaction as follows:

| Name | As of January 12, 2024 | | After Giving Effect to the Merger and Transactions Occurring Prior to or Upon the Closing of the Merger | |
|---|---|---|---|---|
| | Number of Shares of WaveDancer Common Stock Beneficially Owned | Percentage Class | Number of Shares of WaveDancer Common Stock Beneficially Owned | Percentage Class |
| *Management and Directors*[1] | | | | |
| G. James Benoit, Jr.[2] | 387,912 | 17.6% | 427,412 | 1.7% |
| Timothy G. Hannon[3] | 11,333 | * | 41,500 | * |
| Paul B. Becker[4] | 5,500 | * | 11,000 | * |
| James C. DiPaula[5] | 60,966 | 3.0 | 65,966 | * |
| Jack L. Johnson, Jr.[6] | 16,000 | * | 21,000 | * |
| William H. Pickle[7] | 33,641 | 1.7 | 39,141 | * |
| Bonnie K. Wachtel[8] | 40,880 | 2.0 | 46,380 | * |
| | | | | |
| All executive officers and directors as a group (5 persons) | 556,232 | 24.5 | 652,399 | 2.5 |

32.    In addition, Company insiders currently own company options all of which will be subject to accelerated vesting upon the consummation of the Proposed Transaction, and converted into the Merger Consideration not shared with public Company stockholders such as Plaintiff upon the consummation of the Proposed Transaction as follows:

| Optionholder | Number of Shares of Common Stock Subject to WaveDancer Options | | Exercise Price | Grant Date |
|---|---|---|---|---|
| G. James Benoit, Jr. | 3,000 | $ | 28.00 | 08/26/2021 |
| G. James Benoit, Jr. | 100,000 | $ | 48.90 | 12/30/2021 |
| G. James Benoit, Jr. | 36,000 | $ | 8.60 | 11/21/2022 |
| G. James Benoit, Jr. | 12,500 | $ | 2.03 | 11/03/2023 |
| Sub-total | 151,500 | | | |
| Timothy G. Hannon | 2,500 | $ | 48.90 | 12/30/2021 |
| Timothy G. Hannon | 22,500 | $ | 49.90 | 03/22/2022 |
| Timothy G. Hannon | 4,000 | $ | 8.60 | 11/21/2022 |
| Timothy G. Hannon | 12,500 | $ | 2.03 | 11/03/2023 |
| Sub-total | 41,500 | | | |
| Paul B. Becker | 5,000 | $ | 48.90 | 12/30/2021 |
| Paul B. Becker | 1,000 | $ | 8.60 | 11/21/2022 |
| Paul B. Becker | 5,000 | $ | 2.03 | 11/03/2023 |
| Sub-total | 11,000 | | | |
| James C. DiPaula, Jr. | 5,000 | $ | 48.90 | 12/30/2021 |
| James C. DiPaula, Jr. | 5,000 | $ | 2.03 | 11/03/2023 |
| Sub-total | 10,000 | | | |
| Jack L. Johnson, Jr. | 2,000 | $ | 29.00 | 03/31/2021 |
| Jack L. Johnson, Jr. | 5,000 | $ | 48.90 | 12/30/2021 |
| Jack L. Johnson, Jr. | 5,000 | $ | 2.03 | 11/03/2023 |
| Sub-total | 12,000 | | | |
| William H. Pickle | 1,000 | $ | 2.00 | 01/06/2015 |
| William H. Pickle | 1,000 | $ | 1.45 | 04/11/2016 |
| William H. Pickle | 500 | $ | 17.40 | 02/04/2014 |
| William H. Pickle | 1,500 | $ | 29.00 | 03/31/2021 |
| William H. Pickle | 5,000 | $ | 48.90 | 12/30/2021 |
| William H. Pickle | 1,000 | $ | 8.60 | 11/21/2022 |
| William H. Pickle | 5,000 | $ | 2.03 | 11/03/2023 |
| Sub-total | 15,000 | | | |
| Bonnie K. Wachtel | 1,000 | $ | 1.45 | 04/11/2016 |
| Bonnie K. Wachtel | 500 | $ | 17.40 | 02/04/2014 |
| Bonnie K. Wachtel | 1,500 | $ | 29.00 | 03/31/2021 |
| Bonnie K. Wachtel | 5,000 | $ | 48.90 | 12/30/2021 |
| Bonnie K. Wachtel | 1,000 | $ | 8.60 | 11/21/2022 |
| Bonnie K. Wachtel | 5,000 | $ | 2.03 | 11/03/2023 |
| Sub-total | 14,000 | | | |
| Grand Total | 255,000 | | | |

33.     In addition, employment agreements with certain WaveDancer executives entitle such executives to severance packages should their employment be terminated under certain

circumstances. These 'golden parachute' packages are significant and will grant each director or officer entitled to them millions of dollars.

34.     Thus, while the Proposed Transaction is not in the best interests of WaveDancer, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Registration Statement***

35.     On January 22, 2024, the WaveDancer Board caused to be filed with the SEC a materially misleading and incomplete Registration Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

36.     Specifically, the Registration Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Registration Statement fails to disclose:

  a.  Adequate reasoning as to why the Board would agree to a deal in which stockholders' interests would be diluted, with no consideration given;

  b.  Information regarding Defendant Wachtel's decision to vote against entering into the Proposed Transaction;

  c.  Whether the confidentiality agreements entered into by the Company with Firefly differed from any other unnamed confidentiality agreement entered into

between the Company and an interested third parties, and if so the specific manner in which they differed;

d.  All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Firefly, would fall away;

e.  The Company's reason for hiring B. Riley to analyze the Proposed Transaction but failing to require a fairness opinion in connection with same;

f.  Adequate information regarding the consideration paid to, or owed to, the financial advisor engaged by the Company during the sales process for services rendered in relation to the sales process and Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning WaveDancer and Firefly's Financial Projections*

37.     The Registration Statement fails to provide material information concerning financial projections for WaveDancer provided by WaveDancer management to the Board and B. Riley and relied upon by B. Riley in its discussion with the Company regarding the Proposed Transaction. The Registration Statement fails to disclose management-prepared financial projections for the Company.

38.     Notably, the Registration Statement reveals that as part of its analysis, B. Riley reviewed, "Firefly's 2024 projected revenue."

39.     The Registration Statement should have, but fails to provide, certain information in the projections that WaveDancer management may have provided to the Board and B. Riley. Courts have uniformly stated that "projections … are probably among the most highly-prized

disclosures by investors.  Investors can come up with their own estimates of discount rates or []
market multiples.  What they cannot hope to do is replicate management's inside view of the
company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del.
Ch. 2007).

40.     The Registration Statement fails to provide the Company's financial projections.

41.     The Registration Statement fails to provide financial projections for Firefly.

42.     The Registration Statement fails to provide financials projections for the combined
company, particularly given the fact that Firefly based its decision to enter into the transaction, in
part, on the basis of the projections for the combined company.

43.     This information is necessary to provide the Plaintiff, in his capacity as a Company
stockholder, with a complete and accurate picture of the sales process and its fairness.  Without
this information, Plaintiff is not fully informed as to Defendants' actions, including those that may
have been taken in bad faith, and cannot fairly assess the process.

44.     Without accurate projection data for WaveDancer and Firefly being presented in
the Registration Statement, Plaintiff is unable to properly evaluate the Company's true worth, the
accuracy of the exchange ratio, or make an informed decision whether to vote in favor of the
Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include
such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning any Financial Analyses by B. Riley*

45.     The Registration Statement makes clear that B. Riley did not provide the Company
with a fairness opinion, even though it is clear that B. Riley was retained by the Company to advise
the Company, through a series of analyses, whether to proceed with the Proposed Transaction.

46.     As stated, the Registration Statement fails to provide a fairness opinion, or any financial analyses for the Company and Firefly. The Registration Statement also fails to provide a liquidation analysis for the Company if the Proposed Transaction were to not go through, and the Company cannot continue to operate as a standalone company.

47.     The Registration Statement does provide the following: "Using Firefly's 2024 projected revenue, the market capitalizations of other public companies in the health care sector (none of which has a business comparable to Firefly) and certain dilution assumptions that the WaveDancer stockholders could incur, B. Riley provided a projected end of year 2024 valuation for Firefly and the corresponding value that the current shares of WaveDancer could possess, yielding the equity allocation ultimately agreed to in the Merger Agreement."

48.     The Registration fails to disclose any information regarding the analyses prepared by B. Riley and utilized in advising the Company.

49.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

50.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the Board's determination that the Proposed Transaction is in his best interests as a public WaveDancer stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

## FIRST COUNT

## Violations of Section 14(a) of the Exchange Act

## (Against All Defendants)

51.     Plaintiff repeats all previous allegations as if set forth in full herein.

52.     Defendants have disseminated the Registration Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

53.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

54.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

55.     The Registration Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

56.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

57.     The Individual Defendants were at least negligent in filing a Registration Statement that was materially misleading and/or omitted material facts necessary to make the Registration Statement not misleading.

58.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

59.     Plaintiff repeats all previous allegations as if set forth in full herein.

60.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Registration Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

61.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements

- 16 -

were being issued by the Company in the Registration Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Registration Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

62.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of WaveDancer's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Registration Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

63.     The Individual Defendants acted as controlling persons of WaveDancer within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause WaveDancer to engage in the wrongful conduct complained of herein. The Individual Defendants controlled WaveDancer and all of its employees. As alleged above, WaveDancer is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.      Enjoining the Proposed Transaction;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: February 6, 2024                    **BRODSKY & SMITH**

                              By: _Evan J. Smith_____
                                    Evan J. Smith
                                    240 Mineola Boulevard
                                    Mineola, NY  11501
                                    Phone:  (516) 741-4977
                                    Facsimile (561) 741-0626

                                    *Attorneys for Plaintiff*